IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JORDAN BRANSTETTER, | ) | CIVIL NO. 20-00573 HG-WRP |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION TO GRANT |
| vs. | ) | IN PART AND DENY IN PART |
| | ) | PLAINTIFF'S RENEWED MOTION |
| ZETHUS LORENZO, | ) | FOR ENTRY OF DEFAULT FINAL |
| | ) | JUDGMENT AS TO DEFENDANT |
| Defendant. | ) | LORENZO IN HIS INDIVIDUAL |
| | ) | CAPACITY |
| | ) | |
| | ) | |
| | ) | |

FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN
PART PLAINTIFF'S RENEWED MOTION FOR ENTRY OF DEFAULT FINAL
JUDGMENT AS TO DFENDANT LORENZO
IN HIS INDIVIDUAL CAPACITY

Before the Court is Plaintiff Jordan Branstetter's Renewed Motion for

Entry of Default Final Judgment as to Defendant Zethus Lorenzo in his individual

capacity (Renewed Motion). <u>See</u> ECF No. 53. The Court found the Motion

suitable for disposition without a hearing pursuant to Rule 7.1(c) of the Local

Rules of Practice of the United States District Court for the District of Hawaii. <u>See</u>

ECF No. 54. The Court FINDS AND RECOMMENDS that Plaintiff's Renewed

Motion be GRANTED IN PART AND DENIED IN PART.[1]

---

[1] Within fourteen days after a party is served with the Findings and
Recommendation, pursuant to 28 U.S.C. § 636(b)(1), a party may file written
objections in the United States District Court. A party must file any objections

<u>BACKGROUND</u>

According to the First Amended Complaint, Plaintiff alleges that while he was incarcerated at the Hawaii Community Correctional Center (HCCC), an Adult Correctional Officer, Defendant Zethus Lorenzo, physically assaulted him by punching him in the back of the head with a closed fist approximately twenty times.  <u>See</u> ECF No. 20 ¶¶ 8, 15-16.  Plaintiff claims he curled up in a ball as a defensive measure, and that Defendant Lorenzo then kneed him in the back and ribs and choked him.  <u>See id.</u> ¶¶ 16-18.  Plaintiff alleges that Defendant Lorenzo reported that Plaintiff fell out of a taxi upon his return to HCCC from his work furlough program and sustained his visible injuries as a result of a fall.  <u>See id.</u> ¶¶ 13-14, 27-29.  Plaintiff claims he was eventually transported to Hilo Medical Center where he was diagnosed with a severe concussion, two broken ribs, and multiple contusions.  <u>See id.</u> ¶¶ 32-33.  Plaintiff alleges he continues to suffer from anxiety and depression as a result of this incident.  <u>See id.</u> ¶ 34.

Based on these allegations, Plaintiff brought claims for: Declaratory Relief against the State of Hawaii Department of Public Safety (Count I); Excessive Force against Defendant Lorenzo individually (Count II); Assault (Count III); Battery (Count IV); Intentional Infliction of Emotional Distress (Count

---

within the fourteen-day period to preserve appellate review of the Findings and Recommendation.

V); and Negligence (Count VI).  See id. ¶¶ 35-75.

On November 29, 2021, the District Court granted Defendants State of Hawaii Department of Public Safety, Corrections Division - Institutions Division for Hawaii Community Corrections Center and Zethus Lorenzo in his official capacity's Motion to Dismiss, dismissing Count I against the State with prejudice and Counts II-VI against the State and Defendant Lorenzo in his official capacity with prejudice.  See ECF No. 37.  Thus, all that remained were Counts II-VI against Defendant Lorenzo in his individual capacity.  See id.

On January 9, 2022, Plaintiff filed a First Motion for Default Judgment as to Defendant Lorenzo in his individual capacity.  See ECF No. 40.  At that time, Plaintiff had not yet requested that the Clerk enter default against Defendant Lorenzo, and so default had not yet been entered as to Defendant Lorenzo pursuant to Rule 55(a).  See Fed. R. Civ. P. 55(a).

On January 11, 2022, this Court held a status conference and addressed the appropriate procedure for seeking entry of default under Rule 55(a) and then moving for default judgment under Rule 55(b).  See ECF No. 42; see also Symantec Corp. v. Global Impact, Inc., 559 F.3d 922, 923 (9th Cir. 2009) (noting the "two-step process of 'Entering a Default' and 'Entering a Default Judgment'") (citation omitted); Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986) ("Eitel apparently fails to understand the two-step process required by Rule 55.").  The Court also addressed the need for appropriate support of factual contentions

3

submitted in support of any motion—given that Plaintiff's prior motion contained

certain assertions regarding attempts to serve Defendant Lorenzo and attached

supporting photographs, but did not contain a detailed declaration from the process

server who made these attempts or took these photographs.  See ECF No. 42; see

also ECF Nos. 40-1, 40-3, 40-4, 40-5.  Based on the discussion held at the status

conference, Plaintiff's counsel represented an intent to withdraw the prior motion

for default judgment, which was formally withdrawn on January 11, 2022.  See

ECF Nos. 41, 42.

      On January 31, 2022, Plaintiff requested that the Clerk enter default

against Defendant Lorenzo, and default was entered against Defendant Lorenzo

pursuant to Rule 55(a) on February 1, 2022.  See ECF Nos. 43, 47.  Plaintiff then

filed another motion for default judgment on February 12, 2022.  See ECF No. 48.

This Court recommended that the District Court deny that motion without

prejudice, including because Plaintiff had not sufficiently addressed how the Court

could exercise personal jurisdiction over Defendant Lorenzo based on the manner

of service, and because Plaintiff had failed to address the Eitel factors or submit

sufficient evidentiary proof in support of his request for damages and attorney's

fees.  See ECF No. 50.  The District Court adopted that recommendation, which

permitted Plaintiff to file a renewed motion for default judgment.  See ECF No. 52.

Plaintiff's Renewed Motion followed.  See ECF No. 53.

DISCUSSION

The granting or denial of a motion for default judgment is within the discretion of the court.  See Haw. Carpenters' Trust Funds v. Stone, 794 F.2d 508, 511-12 (9th Cir. 1986).  Default judgments are ordinarily disfavored, and cases should be decided on their merits if reasonably possible.  See Eitel, 782 F.2d at 1472.

## A.    Jurisdiction

Before considering the merits of default judgment, the Court has an affirmative obligation to determine whether it has subject matter jurisdiction over this action and personal jurisdiction over Defendant Lorenzo.  See In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place.").

This Court has subject matter jurisdiction over this action because Plaintiff brings a claim under 42 U.S.C. § 1983 alleging a violation of his constitutional rights, where any state law claims are sufficiently related to exercise supplemental jurisdiction over them.  See 28 U.S.C. §§ 1331, 1367(a).

As to personal jurisdiction over Defendant Lorenzo, as the Court noted in its prior Findings and Recommendation, "[a] federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Fed. R. Civ. P. 4."  Travelers Cas. & Sur. Co. of Am. v. Brenneke,

5

551 F.3d 1132, 1135 (9th Cir. 2009) (citation omitted).  Based on the present

record and the arguments contained within Plaintiff's Renewed Motion, the Court

finds Plaintiff has demonstrated that he effected service on Defendant Lorenzo in a

manner that substantially complied with Rule 4, and thus that this Court can

exercise personal jurisdiction over him.[1]

       Rule 4(e)(2) permits service on an individual by:

> (A) delivering a copy of the summons and of the complaint to the individual personally; [or]

> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there[.]

Fed. R. Civ. P. 4(e)(2).  "Rule 4 is a flexible rule that should be liberally construed

so long as a party receives sufficient notice of the complaint."  <u>Direct Mail</u>

<u>Specialists, Inc. v. Eclat Computerized Techs., Inc.</u>, 840 F.2d 685, 688 (9th Cir.

1988) (citation omitted).  "Nonetheless, without substantial compliance with Rule

4 neither actual notice nor simply naming the defendant in the complaint will

provide personal jurisdiction."  <u>Id.</u> (citation omitted).

       "Sufficient service may be found where there is a good faith effort to

comply with the requirements of Rule 4(e)(2) which has resulted in placement of

the summons and complaint within the defendant's immediate proximity and

---

[1] Plaintiff alleges Defendant Lorenzo is a resident of Hawaiʻi that committed the alleged violations within the state of Hawaiʻi and thus, if service here complied with Rule 4, there is no doubt that the Court may exercise personal jurisdiction over Defendant Lorenzo.  <u>See</u>, <u>e.g.</u>, ECF No. 20 ¶¶ 3, 9.

further compliance with Rule 4(e)(2) is only prevented by the defendant's knowing and intentional actions to evade service." Travelers Cas. & Sur. Co. of Am., 551 F.3d at 1136.  "Where a defendant attempts to avoid service *e.g.* by refusing to take the papers, it is sufficient if the server is in close proximity to the defendant, clearly communicates intent to serve court documents, and makes reasonable efforts to leave the papers with the defendant." Id. (citation and alteration omitted).

Here, the process server left a copy of the summons and complaint under the windshield wiper of a truck—a red, lifted Toyota Tacoma with black rims—that was registered to Defendant Lorenzo (and which two individuals identified as Defendant Lorenzo's truck), that was parked at a home Defendant Lorenzo was confirmed to be inside (because the process server saw him enter the house as he approached and because Ms. Andrade, the person who answered the door, confirmed as much).  See ECF No. 53-3 ¶¶ 3, 6, 9.  The process server left the papers on the truck because, after confirming that Defendant Lorenzo was home, Ms. Andrade indicated he would not be accepting service, nor would she. See id. ¶ 9.  The process server thus left the papers under the windshield wiper, informing Ms. Andrade that he had left the papers for Defendant Lorenzo on his truck, which was also clearly visible from the front door of the home; she refused to sign the return of service form.  See id. ¶ 9.  Photographs taken by the process server demonstrate that a home is visible in the background and in close proximity

to the truck where the papers were left.  See id. at 11.

The process server left the papers on the truck on his fourth attempt to serve Defendant Lorenzo at this address.  See ECF No. 53-3 ¶¶ 5-9.[2]  The first time, Ms. Andrade answered and, although the same truck was parked outside, she denied Defendant Lorenzo was home.  See id. ¶ 6.  During the second and third attempts, the process server—who had been provided with a photograph of Defendant Lorenzo—observed someone who looked like Defendant Lorenzo at the home and observed the same truck outside; however, when the process server attempted to serve him, either no one answered (despite the fact that the process server saw people scrambling as he approached and could hear people inside) or the person who did answer denied Defendant Lorenzo was home.  See id. ¶¶ 5, 7-8.

Based upon this record, the Court finds sufficient service based on a good faith effort to comply with Rule 4(e)(2), where the papers were left in Defendant Lorenzo's close proximity, i.e., on his truck parked in very close proximity to and visible from the home he was confirmed to be inside, where further compliance was only prevented by Defendant Lorenzo's knowing and intentional actions to evade service as evidenced by prior attempts where he refused to accept service at the home and Ms. Andrade's confirmation that he

---

[2] The process server first attempted to serve Defendant Lorenzo at HCCC, but was informed he was no longer employed there.  See ECF No. 53-3 ¶ 3.  The process server next attempted to serve Defendant Lorenzo at a former residence before locating the residence where service was effected.  See id. ¶¶ 4-5.

would not be accepting service.  See Travelers Cas. & Sur. Co. of Am., 551 F.3d at

1134-36 (holding plaintiff substantially complied with Rule 4(e)(2) where, after

four prior attempts, the defendant identified himself on the intercom and the

process server saw the defendant watching him from a window so left the

documents on the doorstep after loudly stating that the defendant had been served)

(citing Errion v. Connell, 236 F.2d 447, 457 (9th Cir. 1956) where sheriff tossed

papers through hole in screen door at defendant's home after speaking to

defendant)).

　　　　The Court thus finds that it has jurisdiction to grant default judgment

against Defendant Lorenzo.

## B.　Default Judgment Factors

　　　　Following a determination that jurisdiction is proper, the Court must

consider whether default judgment is appropriate.  The court should consider the

following factors in deciding whether to grant a motion for default judgment:

    (1)   the possibility of prejudice to the plaintiff;
    (2)   the merits of plaintiff's substantive claim;
    (3)   the sufficiency of the complaint;
    (4)   the sum of money at stake in the action;
    (5)   the possibility of a dispute concerning material facts;
    (6)   whether the default was due to excusable neglect; and
    (7)   the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

See Eitel, 782 F.2d at 1471-72 (the Eitel factors).

　　　　On default, "the factual allegations of the complaint, except those

9

relating to the amount of damages, will be taken as true." TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (citation omitted). "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992).

### 1. The Possibility of Prejudice to Plaintiff

The first factor considers whether Plaintiff would suffer prejudice if default judgment is not entered. Here, absent entry of default judgment, Plaintiff would be without any other recourse for recovery. Accordingly, the first Eitel factor favors default judgment.

### 2. Merits of Plaintiff's Substantive Claims

For purposes of liability, the factual allegations in the complaint are taken as true on default. See TeleVideo Sys., Inc., 826 F.2d at 917-18. Here, the allegations in Plaintiff's First Amended Complaint, taken as true, establish that Plaintiff is entitled to default judgment against Defendant Lorenzo.

### a. Excessive Force

Although Plaintiff purports to bring a claim for excessive force under the Fourth Amendment, because he was incarcerated at the time of the incident, the Court reviews this claim under the Eighth Amendment, which imposes a higher burden for proving such claims. See Hughes v. Rodriguez, 31 F.4th 1211, 1220-21

10

(9th Cir. 2022).[3]

     "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not . . . use excessive physical force against prisoners." Farmer v. Brennan, 511 U.S. 825, 832 (1994). There are two general components to an Eighth Amendment excessive force claim: "(1) a 'subjective' inquiry into whether prison staff acted 'with a sufficiently culpable state of mind'; and (2) an 'objective component' that ask[s] whether 'the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.'" Bearchild v. Cobban, 947 F.3d 1130, 1140 (9th Cir. 2020) (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)).

     The subjective inquiry "turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id. (quoting Hudson, 503 U.S. at 6).  The objective component is "contextual and responsive to contemporary standards of

---

[3] The Court finds that reviewing Plaintiff's excessive force claim under the Eighth Amendment is appropriate even though, at the time of the incident, Plaintiff had returned to HCCC in a taxi from a work furlough program. See ECF No. 20 ¶ 3 (alleging the attack occurred "upon HCCC property"); ECF No. 56 ¶ 2 (attesting he was serving an open 5-year term of incarceration); see also Hughes, 31 F.4th at 1221 ("We conclude that the Eighth Amendment applies equally to convicted prisoners inside or outside the walls of the penal institution."). The Court notes, however, that there is no indication Plaintiff was still incarcerated at the time he filed this action, see, e.g., ECF No. 56 ¶¶ 2, 4, 6, and thus presumes the Prison Litigation Reform Act is inapplicable here, see Page v. Torrey, 201 F.3d 1136, 1139 (9th Cir. 2000).

11

decency." Id. (quoting Hudson, 503 U.S. at 8) (internal quotation marks omitted).

The Ninth Circuit has identified the following five factors that bear on the excessive force analysis in connection with a typical Eighth Amendment claim: (1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. See id. at 1141.

Here, Plaintiff has alleged that Defendant Lorenzo viciously assaulted him for nearly twenty minutes as retaliation because Defendant Lorenzo mistakenly believed Plaintiff caused Defendant Lorenzo's brother to lose his job. See ECF No. 20 ¶¶ 3, 16-18. Based on the allegations in the FAC, there was no perceived threat or need to apply force—as Plaintiff immediately complied with Defendant Lorenzo's request that they speak privately upon Plaintiff's return to HCCC. See id. ¶¶ 15-16. Nor did Plaintiff respond in a threatening manner to Defendant Lorenzo's assault, instead curling up in a ball, at which time Defendant Lorenzo kneed Plaintiff in the back and ribs and choked him. See id. ¶¶ 16-18. As noted above, Plaintiff alleges he sustained injuries including a severe concussion, two broken ribs, and multiple contusions. See id. ¶¶ 32-33. Based on the allegations in the FAC, the Court finds Plaintiff has sufficiently pled a claim for excessive force under the Eighth Amendment.

Even if the Court must consider whether Defendant Lorenzo is

12

entitled to qualified immunity where he has defaulted and not asserted such immunity, the Court would nonetheless find that he is not.  At the time of the events here, it was clearly established that an unprovoked and unjustified attack on a prisoner that causes harm violates that prisoner's Eighth Amendment rights.  See, e.g., Felix v. McCarthy, 939 F.2d 699, 701-02 (9th Cir. 1991) (holding qualified immunity afforded no protection where an unprovoked prison official threw an inmate "against a wall, causing bruising, soreness, and emotional damage").

### b. State Law Claims

Turning to his state law claims, Plaintiff first brings claims for assault and battery.  Under Hawai'i law, "[a] person commits the common law tort of assault if he or she acts with intent to cause another a nonconsensual harmful or offensive contact or apprehension thereof, and the other person apprehends imminent contact."  Mukaida v. Hawaii, 159 F. Supp. 2d 1211, 1223 (D. Haw. 2001).  A defendant "causes battery when he or she intentionally causes bodily contact to the plaintiff in a way not justified by the plaintiff's apparent wishes or by a privilege, and the contact is in fact harmful or against the plaintiff's will." Williams v. Aona, 121 Haw. 1, 13, 210 P.3d 501, 513 (2009) (citation omitted). The allegations in the FAC regarding Defendant Lorenzo pulling Plaintiff into a drainage ditch, hitting him in the back of his head, kneeing him in the back ribs, and choking him sufficiently state claims for assault and battery.  See ECF No. 20 ¶¶ 3, 16-18.

13

Plaintiff also brings a claim for intentional infliction of emotional distress (IIED).  Under Hawaiʻi law, the elements of IIED are "1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another." Hac v. Univ. of Hawaii, 102 Haw. 92, 106-07, 73 P.3d 46, 60-61 (2003).  The term "outrageous" has been construed to mean "without just cause or excuse and beyond all bounds of decency."  Lee v. Aiu, 85 Haw. 19, 34 n.12, 936 P.2d 655, 670 n.12 (1997) (citation omitted).  And "extreme emotional distress" constitutes, e.g., mental suffering, mental anguish, nervous shock, and other "highly unpleasant mental reactions."  Hac, 102 Haw. at 106, 73 P.3d at 60 (citation omitted).  The Court finds Plaintiff has sufficiently stated this claim in alleging Defendant Lorenzo's prolonged, unprovoked attack caused him to suffer severe mental and emotional distress, as well as anxiety, depression, humiliation, and fear.  See ECF No. 20 ¶¶ 2-3, 16-18, 34, 66-69.

Finally, Plaintiff brings a negligence claim against Defendant Lorenzo.  Under Hawaiʻi law, negligence requires showing:

> (1) A duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks; (2) A failure on the defendant's part to conform to the standard required: a breach of the duty; (3) A reasonably close causal connection between the conduct and the resulting injury; and (4) Actual loss or damage resulting to the interests of another.

Molfino v. Yuen, 85 Haw. 181, 184, 339 P.3d 679, 682 (2014) (citation omitted).

The Court finds the allegations in the FAC regarding Defendant Lorenzo's conduct sufficiently state a claim for negligence.  See ECF No 20 ¶¶ 3, 16-18, 71-75.

As to all of these state law claims, though, under Hawai'i law, non-judicial government officials acting in the performance of their public duties enjoy a "qualified or conditional privilege."  Towse v. State, 64 Haw. 624, 631, 647 P.2d 696, 702 (1982).  The privilege protects the official from liability for tortious acts unless the injured party demonstrates by "clear and convincing proof" that the official was motivated by "malice and not by an otherwise proper purpose."  Id.  "Actual malice" in this context means "the intent, without justification or excuse, to commit a wrongful act, reckless disregard of the law or of a person's legal rights, and ill will; wickedness of heart."  Awakuni v. Awana, 115 Haw. 126, 141, 165 P.3d 1027, 1042 (2007) (alterations and citation omitted).  Based on the allegations in the FAC that Defendant Lorenzo attacked Plaintiff as a form of retaliation rather for any legitimate reason connected to his role at HCCC, the Court finds the allegations in the FAC are sufficient to prove malice as to both his intentional tort claims and as to negligence.[4]

---

[4] See Franson v. City & Cnty. of Honolulu, 2016 WL 4007549, at *8 (D. Haw. July 26, 2016) ("Courts within this district have recognized, in the context of excessive force cases, that the higher burden of proof with respect to malice does not necessarily preclude a claim based on negligence.") (citation omitted); see also Long v. Yomes, 2011 WL 4412847, at *7 (D. Haw. Sept. 20, 2011) ("[C]onduct performed with 'reckless disregard of the law or of a person's legal rights' may be negligent, even though negligent conduct often does not involve malice.") (citation omitted).

### 3.        Sufficiency of the Complaint

As discussed above, the allegations in the FAC are sufficiently pled and supported by the documents filed with it and the Renewed Motion.  The Court finds that the sufficiency of the complaint weighs in favor of default judgment.

### 4.        Sum of Money at Stake

The Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002).  Here, Plaintiff seeks general damages totaling $550,000 and attorney's fees and costs totaling $26,687.29.  See ECF No. 53 at 28-30.  Given the amount of money at stake, then, the Court finds that this factor does not clearly weigh in favor of default judgment—although it also does not preclude the Court from granting default judgment, particularly when considering the seriousness of Defendant Lorenzo's conduct.

### 5.        Possibility of Dispute Concerning Material Facts

As stated above, the well-pled factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.  See TeleVideo Sys., Inc., 826 F.2d at 917-18.  Defendant Lorenzo has been given a fair opportunity to defend this action and has not done so.  Because no dispute has been raised regarding Plaintiff's material factual allegations, this factor favors default judgment.

### 6.        Whether Default was Due to Excusable Neglect

16

Based on the Court's findings regarding the sufficiency of service above, the Court finds that Defendant Lorenzo's default was not the result of excusable neglect, but rather due to his conscious and willful decision not to defend this action.  This factor too favors default judgment.

### 7.    Policy Favoring Decisions on the Merits

Defendant Lorenzo's default renders a decision on the merits impractical, if not impossible.  Under Rule 55, "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." PepsiCo., Inc., 238 F. Supp. 2d at 1177; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 501 (C.D. Cal. 2003) ("the mere existence of Fed. R. Civ. P. 55(b) indicates that the seventh Eitel factor is not alone dispositive").  Here, Defendant Lorenzo has failed to defend this action and has consequently rendered adjudication on the merits before this Court impracticable. This factor does not preclude the Court from entering default judgment against Defendant Lorenzo.

### 8.    Totality of Eitel Factors

Accordingly, the Court finds that the totality of the Eitel factors weigh in favor of entering default judgment against Defendant Lorenzo.  The Court therefore RECOMMENDS that the District Court enter default judgment in Plaintiff's favor against Defendant Zethus Lorenzo in his individual capacity.

17

### C.    Remedies

Finally, although a defendant's default establishes liability, it does not establish all relief to which a plaintiff is entitled.  Plaintiff must provide evidence to support its requested relief and that relief "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  As noted above, the rule that the factual allegations of the complaint are taken as true does not apply to the amount of damages.  See TeleVideo Sys, Inc., 826 F.2d at 917-18.  "To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit."  Concord Transportation, Inc. v. Houser Logistics, Inc., 2020 WL 2046169, at *5 (C.D. Cal. Jan. 3, 2020) (citation omitted).  "Courts apply the preponderance of the evidence standard to a plaintiff's damages case on default judgment."  Id.

Rule 55 provides that the court may conduct a hearing to effectuate judgment when it needs to determine the amount of damages.  See Fed. R. Civ. P. 55(b)(2).  However, if damages are capable of being determined from figures in documentary evidence or detailed affidavits, default judgment may be entered without a hearing.  See United States v. Yermian, 2016 WL 1399519, at *3 (C.D. Cal. Mar. 18, 2016) ("Rule 55 does not require the court to conduct a hearing on damages, so long as it ensures there is an adequate basis for the damages awarded in the default judgment.").  Each category of damages that Plaintiff seeks are discussed below.

18

### 1. Hedonic Damages

Plaintiff seeks $50,000 in hedonic damages.  See ECF No. 53 at 28.

"Hedonic damages are damages for the loss of enjoyment of life, or for the value

of life itself, as measured separately from the economic productive value that the

injured or deceased person would have had."  Rigsbee v. City & Cnty. of

Honolulu, 2018 WL 5017610, at *5 (D. Haw. Oct. 16, 2018).  Hedonic damages

are recoverable under Hawai'i law.  See Montalvo v. Lapez, 77 Haw. 282, 301,

884 P.2d 345, 364 (1994) (citing Hawai'i Revised Statutes (HRS) § 663–8.5(a)

("Noneconomic damages which are recoverable in tort actions include damages for

. . . loss of enjoyment of life . . .")).  In Montalvo, in affirming that the trial court

did not abuse its discretion in excluding expert testimony on hedonic damages, the

Hawai'i Supreme Court stated:

> The measurement of the joy of life is intangible.  A jury may draw upon
> its own life experiences in attempting to put a monetary figure on the
> pleasure of living.  It is a uniquely human endeavor requiring the trier
> of fact to draw upon the virtually unlimited factors unique to us as
> human beings.  Testimony of an economist would not aid the jury in
> making such measurements because an economist is no more expert at
> valuing the pleasure of life than the average juror.   The loss of
> enjoyment of life resulting from a permanent injury is not subject to an
> economic calculation.

77 Haw. at 303, 884 P.2d at 366 (citations and alterations omitted).  Based on the

statements from his declaration that Plaintiff continues to suffer from depression,

anxiety, and trauma, the Court finds awarding $50,000 for loss of enjoyment of life

is appropriate here.  See ECF No. 56 ¶ 21.

The Court therefore RECOMMENDS that the District Court award Plaintiff $50,000 in hedonic damages.

### 2. Past Pain and Suffering

Plaintiff seeks $150,000 for past pain and suffering based on the physical injuries he suffered as a result of Defendant Lorenzo's actions, namely broken ribs, a concussion, and scrapes and bruises.  See ECF No. 53 at 28-29; see also HRS § 663-8.5(b) ("Pain and suffering is one type of noneconomic damage and means the actual physical pain and suffering that is the proximate result of a physical injury sustained by a person.").  As with hedonic damages discussed above, damages for pain and suffering are another form of general damages that are difficult to measure in precise monetary terms.  See Kanahele v. Han, 125 Haw. 446, 451 n.8, 263 P.3d 726, 731 n.8 (2011)("General damages encompass all the damages which naturally and necessarily result from a legal wrong done, . . . and include such items as pain and suffering, inconvenience, and loss of enjoyment which cannot be measured definitively in monetary terms.")(citation omitted). "The Hawaii Supreme Court has ruled that pain and suffering is measured by what the trier of fact considers will reasonably compensate the plaintiff in light of the intensity and extent to which [he] suffered." Mueller v. Dep't of Pub. Safety, 2022 WL 980696, at *8 (D. Haw. Mar. 31, 2022) (citing Barretto v. Akau, 51 Haw. 383, 393-94, 463 P.2d 917, 923 (1969)).  "Pain and suffering can be based on the plaintiff's testimony alone[.]"  Id.

Based on statements contained within Plaintiff's declaration regarding Defendant Lorenzo's conduct and the harm suffered by Plaintiff, the Court finds Plaintiff is entitled to $150,000 in damages for past pain and suffering here based on the injuries he suffered and the extent of those injuries resulting from Defendant Lorenzo's attack.  See ECF No. 56 ¶¶ 2-21.

The Court therefore RECOMMENDS that the District Court award Plaintiff $150,000 in damages for past pain and suffering.

### 3. Future Pain and Suffering

Plaintiff also seeks $350,000 for his future pain and suffering.  See ECF No. 53 at 29-30.  He cites Hawai'i case law that recognizes that a plaintiff may only recover for future pain and suffering if it is *reasonably probable*—and thus holds that, although expert testimony is not necessary to support a claim for damages for future pain and suffering where the injury is objective, it is necessary when the injury is subjective.  See ECF No. 53 at 29 (citing Larsen v. Pacesetter Sys., Inc., 74 Haw. 1, 44–47, 837 P.2d 1273, 1294-96, amended (Oct. 22, 1992), amended on reh'g in part, 74 Haw. 650, 843 P.2d 144 (1992)).  Plaintiff contends that he need not submit expert evidence in support of his request here because "he suffered an objective injuries [sic] with two broken ribs, a concussion, and visible bruises and scrapes that manifested physically and required treatment and medical attention."  ECF No. 53 at 29.  The Court finds this is insufficient to demonstrate Plaintiff may recover these damages—based on the authority he relies on—

because he has not provided expert evidence as to why those injuries are reasonably probable to result in future pain and suffering.

Larsen distinguished between an objective injury as one where "it is plainly apparent from the injury itself that the harm is permanent or that the injured person will necessarily undergo pain and suffering in the future" and a subjective one where "a layperson cannot with reasonable certainty know whether there will be future pain and suffering."  74 Haw. 1, 44–45, 837 P.2d 1273, 1295.  The Hawai'i Supreme Court listed examples of objective injuries in this context as including: loss of limbs, loss of sensory organs, or where a plaintiff has been crippled or seriously disfigured.  See id.  On the contrary, a plaintiff's complaints of head, back, and shoulder pain were examples of subjective injuries, as was the plaintiff's injury in Larsen, where he sought damages for future pain and suffering for a blood clot, which he alleged caused and would continue to cause symptoms like dizziness, confusion, and memory loss, and could cause future blood clots that could cause death.  See id.  As summarized by the Hawai'i Supreme Court:

> [T]he only "objective" component of plaintiff's injury was the clot, which could not be directly observed, and was diagnosed after plaintiff's physician observed its effect on other parts of plaintiff's body.  Even if the jury were able to observe the clot, it would not be plainly apparent to a layperson that the injury would be permanent, that plaintiff would experience the symptoms he testified to, or that plaintiff's symptoms would continue into the future.  We find that expert testimony was necessary to establish a reasonable probability of future pain and suffering.

Id.  So too here.  Even if the Court presumes that it could "observe" the broken

22

ribs, concussion, and scrapes, Plaintiff has not submitted any expert evidence (or even argued in his Renewed Motion) as to how these injuries are permanent and will cause pain and suffering that continue into the future.

The Court therefore FINDS that Plaintiff has not met his burden as to the request for $350,000 for damages for future pain and suffering, and therefore RECOMMENDS that the District Court DENY this portion of the Renewed Motion.

### 4. Attorney's Fees and Costs

Finally, Plaintiff requests $26,687.29 in attorney's fees and costs.  See ECF No. 53 at 30.

First, as to Plaintiff's request for $679.45 in costs, the Court RECOMMENDS the District Court deny Plaintiff's request WITHOUT PREJUDICE to Plaintiff filing an appropriate Bill of Costs that complies with Local Rule 54.1.  Compare LR54.1(c) (stating a Bill of Costs "must be supported by a memorandum setting forth the grounds and authorities supporting the request and an affidavit that the costs claimed are correctly stated, were necessarily incurred, and are allowable by law"); with ECF No. 53-1 ¶¶ 3-4, and ECF No. 53 at 30 (offering no authority in support of Plaintiff's request for costs).

Next, as to Plaintiff's request for attorney's fees, the Court finds Plaintiff is entitled to recover attorney's fees as a prevailing party pursuant to 42 U.S.C. § 1988.  See 42 U.S.C. § 1988(b) (providing district court has discretion to

award reasonable attorney's fees to a prevailing party for a claim brought under 42 U.S.C. § 1983); see also Braunstein v. Arizona Dep't of Transp., 683 F.3d 1177, 1187 (9th Cir. 2012) ("Because Congress wanted to encourage individuals to seek relief for violations of their civil rights. . . [a] prevailing plaintiff may receive attorneys' fees as a matter of course[.]").  Where, as here, a Plaintiff is successful on some claims (against Defendant Lorenzo individually) and unsuccessful on others (as evidenced by those previously dismissed from this action), the Supreme Court has noted:

> The fee award, of course, should not reimburse the plaintiff for work performed on claims that bore no relation to the grant of relief: Such work cannot be deemed to have been expended in pursuit of the ultimate result achieved.  But the presence of these unsuccessful claims does not immunize a defendant against paying for the attorney's fees that the plaintiff reasonably incurred in remedying a breach of his civil rights.

Fox v. Vice, 563 U.S. 826, 834 (2011) (citation omitted).

When determining the appropriate amount of attorney's fees more generally, "[t]he Supreme Court has instructed that '[t]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate,' an approach commonly known as the 'lodestar' method."  Vargas v. Howell, 949 F.3d 1188, 1194 (9th Cir. 2020) (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). "Determining the number of hours reasonably expended requires 'considering whether, in light of the circumstances, the time could reasonably have been billed

24

to a private client.'"  Id. (quoting Moreno v. City of Sacramento, 534 F.3d 1106,

1111 (9th Cir. 2008)).  "Reasonable hourly rates 'are to be calculated according to

the prevailing market rates in the relevant community.'"  Id. (quoting Blum, 465

U.S. at 895).

### a. Reasonably Hourly Rate

Plaintiff requests an hourly rate of $250, attesting that he has been

practicing as a solo-practitioner focusing on civil litigation and criminal defense in

Hawai'i since 2016.  See ECF No. 53-1 ¶¶ 5-7.  In determining whether an hourly

rate is reasonable, the Court considers the experience, skill, and reputation of the

attorney requesting fees.  See Webb v. Ada Cnty., 285 F.3d 829, 840 & n.6 (9th

Cir. 2002).  The fee applicant bears the burden of showing that the rates requested

are reasonable.  See Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 980 (9th Cir.

2008) ("Affidavits of the plaintiff['s] attorneys and other attorneys regarding

prevailing fees in the community . . . are satisfactory evidence of the prevailing

market rate.") (citation and alterations omitted).  Reasonable hourly rates are

determined by reference to the prevailing market rates in the forum district.  See id.

at 979-80.  "However, declarations filed by the fee applicant do not conclusively

establish the prevailing market rate."  Id. at 980.

Plaintiff's counsel's declaration asserts that an hourly rate of $250 is

"reasonable and necessary" here, and attests that this rate is "at or below" the rate

"customarily charged in the community for similar work by attorneys of similar []

experience, ability, and standing in the Honolulu legal community, and is the rate awarded by this Court in a similar, prior default action."  ECF No. 53-1 ¶¶ 5, 7. However, Plaintiff fails to cite the Court to these examples referenced.  Based on the Court's familiarity with prevailing rates in this District, the fact that Plaintiff's counsel has been practicing for approximately 6 years, and the Court's experience with Plaintiff's counsel's filings in this matter, the Court finds that a reduction in Plaintiff's requested rate is appropriate and that a reasonable hourly rate here is $200.  See, e.g., Mueller v. Dep't of Pub. Safety, 2022 WL 1207322, at *4 (D. Haw. Apr. 7, 2022), report and recommendation adopted as modified, 2022 WL 1204931 (D. Haw. Apr. 22, 2022) (finding $200 hourly rate reasonable in civil rights action for associates with ten to five years of experience, and $225 rate to be reasonable for associate with eleven years of experience; citing recent example from this District where court found an hourly rate of $200, reduced from $350, was appropriate for attorney with five years of experience).

### b. Reasonable Hours

Plaintiff seeks to recover for 99.35 hours of work.  Plaintiff bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked.  See Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992).  The court is required to explain how it made its fee determination in a comprehensible, but not elaborate fashion.  See Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008).

26

As noted above, "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." Hensley v. Eckerhart, 461 U.S. 424, 440 (1983).  Where, as here, "the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." Id.  "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." Id.  "But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." Id.

The Court finds that deductions to Plaintiff's requested number of hours is appropriate because the following entries reflect either work related to the claims dismissed by the District Court based on sovereign immunity, thus bearing no relation to the grant of relief awarded against Defendant Lorenzo in his individual capacity here (e.g., related to serving defendants other than Defendant Lorenzo or a motion to dismiss that did not address any claim against Defendant Lorenzo in his individual capacity), or because the work performed was not reasonably expended, and instead necessary only because Plaintiff's counsel failed to comply with certain straightforward rules (e.g., regarding when a party must serve the complaint or request an extension to do so, when an amended complaint

may be filed without a formal motion, and the procedures for seeking entry of

default and default judgment)[5]:

| Date | Entry | Time |
|------|-------|------|
| 01/5/21 | Prepare and Submit Mailing of Complaint and Summons to AG and DPA's office | 0.5 |
| 05/18/21 | Review of Court's Decision to Dismiss Action w / o Prej. [Dkt. 14] | 0.3 |
| 05/18/21 to 05/29/21 | Prepare and Submit Objection to Dismiss Action Without Prejudice. [Dkt. 15] | 2.4 |
| 6/27/21 – 6/30/21 | Prepare and Submit Motion for Leave to Amend Complaint [Dkt. 18-20] | 1.8 |
| 8/30/21 | Review of AG's motion to Dismiss [Dkt. 29] | 2.1 |
| 09/01/21 – 09/15/21 | Prepare and Submit Memo in Opp to Motion to Dismiss. [Dkt. 32] | 4.3 |
| 11/29/21 | Review of Court's Order RE: Motion to Dismiss [Dkt. 37] | 0.3 |
| 12/02/21 | Research Law on Entry of Default and Motion for Default Judgment | 2.1 |
| 02/01/22 – 2/12/22 | Prepare and Submit First Motion for Default Judgment | 4.2 |
| 03/14/22 | Review of Court's Order RE: Motion for Default Judgment | 0.2 |
| **TOTAL DEDUCTED HOURS:** | | 18.2 |

The Court thus finds a reasonable number of hours here to be: 81.15 (99.35

requested minus 18.2 deducted).  Overall, the Court finds the following fee award

is appropriate here:

| ATTORNEY | HOURS | RATE | TOTAL |
|----------|-------|------|-------|
| Aaron K. Wills, Esq. | 81.15 | $200 | $16,230.00 |
| General Excise Tax | | 4.712% | $764.76 |
| | | **TOTAL** | **$16,994.76** |

---

[5] See ECF Nos. 14, 15, 18, 19, 40, 41, 42, 50, 52.

The Court therefore RECOMMENDS the District Court award $16,994.76 in attorney's fees.

CONCLUSION

For the reasons stated above, the Court FINDS and RECOMMENDS that Plaintiff's Renewed Motion be GRANTED IN PART and DENIED IN PART as follows:

1) that default judgment be entered in Plaintiff's favor against Defendant Zethus Lorenzo;

2) that Plaintiff be AWARDED $50,000 in hedonic damages; $150,000 for past pain and suffering; and $16,994.76 in attorney's fees; and

3) that Plaintiff's request for costs be DENIED WITHOUT PREJUDICE to Plaintiff filing a Bill of Costs that complies with Local Rule 54.1.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, JULY 12, 2022.



Wes Reber Porter
United States Magistrate Judge

**BRANSTETTER v. LORENZO; CIVIL NO. 20-00573 HG-WRP; FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFF'S RENEWED MOTION FOR ENTRY OF DEFAULT FINAL JUDGMENT AS TO DEFENDANT LORENZO IN HIS INDIVIDUAL CAPACITY**